```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF RHODE ISLAND

_____
                              )
MIGUEL PEREZ ALGARIN,         )
                              )
            Plaintiff,        )
                              )
    v.                        )   C.A. No. 10-370-S
                              )
CENTRAL FALLS DETENTION FACILITY )
CORPORATION;                  )
WAYNE T. SALISBURY, JR.;      )
AVCORR MANAGEMENT, LLC;       )
ANTHONY VENTETUOLO, JR.;      )
GLENN RIVERA-BARNES;          )
UNKNOWN CENTRAL FALLS DETENTION )
FACILITY CORRECTIONAL OFFICERS, )
MEDICAL STAFF AND ADMINISTRATORS, )
                              )
            Defendants.       )
_____)
```

## OPINION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Before the Court are Plaintiff's motion to amend complaint and a motion to dismiss by Defendants Central Falls Detention Facility Corporation, Wayne T. Salisbury, Jr., AVCORR Management, LLC, and Anthony Venteuolo, Jr. ("Moving Defendants"). For the reasons set forth below, Plaintiff's motion to amend is granted and the Moving Defendants' motion to dismiss is granted in part and denied in part.

I.  Background

Plaintiff Miguel Perez Algarin ("Perez Algarin") is a citizen of Connecticut and a former inmate of the Donald W. Wyatt Detention Facility ("Wyatt") in Central Falls, Rhode Island. Defendant Glenn Rivera-Barnes ("Rivera-Barnes") is a former medical technician at Wyatt. Perez Algarin alleges that while he was incarcerated at Wyatt, Rivera-Barnes sexually assaulted him on several occasions. Perez Algarin brought this action against Rivera-Barnes and the Moving Defendants (as well as some "unknown" officers) seeking damages under a variety of state and federal claims. He seeks redress under state law claims of assault and battery; negligence; intentional infliction of emotional distress (IIED); negligent infliction of emotional distress (NIED); negligent hiring, training, supervision, and retention; false imprisonment; and respondeat superior. He also seeks to recover under 42 U.S.C. § 1983 for cruel and unusual punishment, failure to protect, and denial of due process.[1]

---

[1] All claims are alleged against both Rivera-Barnes and the Moving Defendants, except for assault and battery, which is alleged only against Rivera-Barnes, and negligent hiring, training, supervision, and retention and respondeat superior, which are alleged only against the Moving Defendants.

After the Moving Defendants filed a motion to dismiss, Perez Algarin moved to amend his Complaint. The Court considers first the motion to amend and then the motion to dismiss.

II. Motion to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts "should freely give leave [to amend] when justice so requires." A district court's denial of a motion to amend will not be upheld "unless there appears to be an adequate reason for the denial (e.g., undue delay, bad faith, dilatory motive on the part of the movant, futility of the amendment)." Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Here, the Court perceives no reason for denying leave to amend. By their own admission, the Moving Defendants' arguments for denying the motion to amend as futile amount to saying that the amended complaint should be dismissed for failure to state a claim upon which relief may be granted. (Obj. to Mot. to Amend 1-2, 6-7, ECF No. 23.) Accordingly, these arguments are appropriately dealt with in discussing the motion to dismiss. See Almeida v. United Steelworkers of Am. Int'l Union, AFL-CIO, 50 F. Supp. 2d 115, 120 (D.R.I. 1999) (analyzing a motion to dismiss and a motion to amend simultaneously when defendant argued that the proposed amendments would be futile). The Court therefore

grants Perez Algarin's motion to amend, which makes the First Amended Complaint (the "complaint") the operative document on the motion to dismiss. See Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008) (holding that an amended complaint "supersedes the antecedent complaint" and makes it "a dead letter").[2]

III. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). Accepting his allegations as true, as it must on a motion to dismiss, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002), the Court now considers whether any of Perez Algarin's claims should be dismissed.

---

[2] Perez Algarin also argues that he was entitled to amend his complaint as of right, because he filed his motion to amend on the date his response to the motion to dismiss was due. However, Perez Algarin cites no authorities for the proposition that an extension of the deadline to respond to a motion to dismiss carries with it a corresponding extension of the deadline for amendment as of right, which, under Fed. R. Civ. P. 15(a)(1)(B), is 21 days after service of the motion to dismiss. The Court need not address the amendment as of right issue because it grants leave to amend in any event.

A.  Negligence

The elements of an action for negligence under Rhode Island law are a legal duty owed to the plaintiff by the defendant, a breach of that duty, and damages sustained by the plaintiff as a proximate result of the defendant's breach. <u>Medeiros v. Sitrin</u>, 984 A.2d 620, 625 (R.I. 2009) (citing <u>Santana v. Rainbow Cleaners, Inc.</u>, 969 A.2d 653, 658 (R.I. 2009)). Because the Moving Defendants have conceded for purposes of this motion that they had a duty to protect Perez Algarin from sexual assault, the critical issue here is whether they were on notice that Rivera-Barnes might sexually assault Perez Algarin. <u>See</u> <u>Saunders v. State</u>, 446 A.2d 748, 751 (R.I. 1982) (holding that a prison official's "duty to provide reasonable care to protect an inmate from violence would not be violated in the absence of a determination that the danger was known or, in the exercise of ordinary care, should have been known by the prison official").

Stripped of intermingled legal conclusions and conclusory allegations, the complaint contains at least the following truly factual allegations regarding notice:

> 33.  Defendant Salisbury, on behalf of Defendant CFDFC is quoted in a press release acknowledging and admitting, "the jail first learned of a 'serious allegation' last April (2008) involving a staff member and "two detainess [sic]." <u>See</u> <u>Ex. D, Providence Journal, March 5, 2009</u>.

> 34. Defendant CFDFC is quoted in a press release acknowledging and admitting that "CFDF [sic] learned of the allegations in April 2008 . . ." See Ex. C.
>
> . . . .
>
> 50. In or around April or May 2008, Plaintiff reported to another female medical staff member and believed to be a Registered Nurse that he did not feel comfortable with Barnes treating him.
>
> 51. In or around April or May 2008, Plaintiff reported the sexual assaults to a guard in his housing unit and asked if he could help him. The guard responded that Plaintiff should get a lawyer and that he (Barnes) is not suppose [sic] to do that.
>
> 52. In or around May 2008, Plaintiff asked a female staff member, identified as a Unit Counselor, for a copy of the Prisoner Rape Elimination Act information that was posted on the bulletin board.
>
> . . . .
>
> 61. On diverse dates, including June 12, 2008, Plaintiff complained to a Wyatt psychologist about the inappropriate sexual contact and sexual assaults by Defendant Barnes.

(Compl. ¶¶ 33-34, 50-52, 61.)

These allegations contain specific facts underlying the element of notice. Indeed, the allegation that Moving Defendants <u>admitted</u> notice of the assault is more than a complainant is often able to allege before discovery.[3] The Moving Defendants contend that Perez Algarin may not rely on

---

[3] Perez Algarin concedes (Obj. to Mot. to Dismiss 4) that such an allegation, supported by newspaper articles alone, is not sufficient to prove the claim at trial.

6

newspaper articles attached as exhibits to his complaint to support the allegations therein. (Reply 2-4, ECF No. 24.) But the authorities cited to support this proposition say no such thing; rather, they discuss whether it is proper to take judicial notice of facts reported in newspaper articles. Here, the issue is not judicial notice but the sufficiency of the complaint's allegations, accepted as true. The pertinent newspaper articles are quoted and paraphrased in and attached to the complaint, so they are part of the complaint for purposes of the motion to dismiss. See, e.g., Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) ("Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6).") (citing Fed. R. Civ. P. 10(c)). The Moving Defendants' plea to disregard some of the allegations in the complaint is unavailing; Perez Algarin's allegations suffice to demonstrate a plausible entitlement to relief in an action for negligence.

    B.   IIED

An IIED claim has four elements: "(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the

wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe." Swerdlick v. Koch, 721 A.2d 849, 862 (R.I. 1998) (citation omitted). "[S]ome proof of medically established physical symptomatology" is also required. Id. at 862-63.

Although the complaint includes a conclusory allegation that the Moving Defendants acted "intentionally" (Compl. ¶ 88), it does not allege any specific facts demonstrating intentional conduct on the part of the Moving Defendants (as opposed to Rivera-Barnes). Accordingly, the allegations do not suffice to state a claim for IIED based on the Moving Defendants' intentional conduct. The allegations do, however, state a claim for IIED based on the Moving Defendants' reckless disregard of whether their conduct would cause Perez Algarin emotional distress. Specifically, the complaint alleges that the Moving Defendants were aware as of April 2008 of serious allegations of inmate sexual abuse by Rivera-Barnes but continued to allow him to be placed in an environment of private, unsupervised contact with Perez Algarin and failed to dismiss him until July, by which time he had sexually assaulted Perez Algarin several times. The first element of IIED is thus adequately pled.

Whether the Moving Defendants' conduct was extreme or outrageous is a closer call. It is not disputed that Rivera-

8

Barnes' sexual abuse of Perez Algarin was extreme or outrageous; but it does not necessarily follow that the Moving Defendants' failure to prevent such abuse was also so. Whether it was depends on exactly what if anything they knew regarding the risk of Rivera-Barnes sexually assaulting an inmate and, if they knew of a substantial risk, what if anything they did (or did not do) to mitigate it. These questions can be answered only with the benefit of discovery. Indeed, a case on which the Moving Defendants place great reliance, Lee v. Gelineau, Nos. Civ.A.93-3466, Civ.A.93-3468, 2001 WL 770932, at *12 (R.I. Super. Ct. June 28, 2001), did not make a finding as to outrageousness until after a bench trial. While Perez Algarin's IIED claim might be thrown out at a later stage in the litigation due to a lack of evidence on this (or any other) element, the allegations on the second element are sufficient to survive a motion to dismiss.

As for the third and fourth elements, Perez Algarin sufficiently pleads them by alleging that as a result of the sexual assaults he experienced severe emotional distress. And allegations that he is being treated and medicated for depression and posttraumatic stress disorder and was recently hospitalized after an attempted suicide (Compl. ¶¶ 73-75) adequately plead the physical symptoms element. See Castellucci

9

v. Battista, 847 A.2d 243, 249 (R.I. 2004) (affirming that posttraumatic stress disorder and trauma "constitute physical manifestations adequate to satisfy the physical element of an emotional distress action" (citing Grieco v. Napolitano, 813 A.2d 994, 997-98 (R.I. 2003))). Because Perez Algarin adequately alleges facts supporting each element of IIED, this claim survives the motion to dismiss.

C. NIED

The Moving Defendants assert that the NIED claim must be dismissed because the allegations of notice and physical symptomatology are insufficient. (Obj. to Mot. to Amend 11, 13-14.) As the Court has determined that these allegations are sufficient, the NIED claim must stand.[4]

D. Negligent Hiring, Training, Supervision, and Retention

Count V of the complaint is a bundle of torts containing the theories of negligent hiring, negligent training, negligent

---

[4] The Rhode Island Supreme Court has held that "[o]nly two classes of persons may bring claims for negligent infliction of emotional distress: those within the 'zone-of-danger' who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim whom they witness being injured." Jalowy v. Friendly Home, Inc., 818 A.2d 698, 710 (R.I. 2003) (citing Marchetti v. Parsons, 638 A.2d 1047, 1049, 1051 (R.I. 1994)). The Moving Defendants do not claim that Perez Algarin does not fall into any of these two categories; rather, they premise their argument for dismissal of the NIED count on the issues of notice and physical symptomatology. Accordingly, those are the only issues before the Court on this count.

supervision, and negligent retention. The Court will separately consider each stick in this bundle. See Welsh Mfg., Div. of Textron, Inc. v. Pinkerton's, Inc., 474 A.2d 436, 441 (R.I. 1984) (separately addressing negligent hiring, retention, supervision, training, and assignment).

The complaint contains no non-conclusory allegations that the Moving Defendants knew or should have known at the time they hired Rivera-Barnes that he was likely to commit sexual assault. Perez Algarin does not allege, for example, that Rivera-Barnes had a history of sexual misconduct at the time he was hired or that there was any other information that should have tipped off the Moving Defendants to his predatory tendencies at the time of his hiring. Similarly, there are no specific allegations as to training--for example, what Rivera-Barnes' training was, how it was deficient, and how better training would have prevented the sexual assaults. Accordingly, the negligent hiring and negligent training claims in this count should be dismissed.[5]

However, Perez Algarin's allegations are sufficient to make out claims for negligent supervision and negligent retention. Perez Algarin has alleged that the Moving Defendants were aware

---

[5] The negligent training allegation targets the training of Rivera-Barnes, not his supervisors. (See Compl. ¶ 110.) But to the extent the theory is construed as attacking the training of those who failed to adequately supervise Rivera-Barnes, it blends with negligent supervision and is addressed below.

11

as of April 2008 of serious allegations that Rivera-Barnes was abusing inmates, and yet they not only continued to retain him until July but also allowed him to be alone with Perez Algarin in an examination room with the door closed and the curtains shut, in violation of the prevailing practice and protocol. (Compl. ¶¶ 25-66.) Such private, unsupervised, and unauthorized contact was allegedly permitted even when an emergency was called and all personnel except for Rivera-Barnes and Perez Algarin evacuated the Wyatt Health Service Unit. (Id. ¶ 57.) Moreover, the complaint alleges that Rivera-Barnes was permitted to provide prescription medication to inmates without proper medical authorization and in exchange for sex. (Id. ¶ 107.) These allegations suffice to establish a plausible claim to relief for negligent supervision and negligent retention.

    E.  False Imprisonment

False imprisonment is an intentional tort. Dyson v. City of Pawtucket, 670 A.2d 233, 239 (R.I. 1996) ("To establish this cause of action, a plaintiff must show . . . that . . . the defendant intended to confine him."). The complaint alleges that Rivera-Barnes intended to confine Perez Algarin in the examination rooms, but it does not allege that the Moving Defendants so intended. Nor would such a claim be plausible, as there are no factual allegations to support it. The false

imprisonment claim against the Moving Defendants must therefore be dismissed.[6]

F. Respondeat Superior

An employer is generally not liable for an employee's intentional tort. Drake v. Star Market Co., 526 A.2d 517, 519 (R.I. 1987). However, liability may attach if the employee's tort "is committed while performing a duty in the course of his employment and by express or implied authority from the employer." Id. The law will imply such authority and impute respondeat superior liability when the employer "was aware, or should have been aware, that the nature of the employee's official tasks involved a substantial risk that the employee might inflict upon a third party an intentional tort in the course of furthering the employer's business." Liu v. Striuli, 36 F. Supp. 2d 452, 470 (D.R.I. 1999); accord Drake, 526 A.2d at 519.

Perez Algarin alleges that given the Moving Defendants' knowledge of serious allegations that Rivera-Barnes had sexually abused inmates, and given that Rivera-Barnes' duties as a medical technician would sometimes place him in private

---

[6] It might be possible for Perez Algarin to recover from Moving Defendants for false imprisonment committed by Rivera-Barnes under a theory of respondeat superior, which is discussed below.

13

conference with inmates and allow him to examine and contact intimate areas of their naked bodies, it is proper in this case to impute respondeat superior liability. The Moving Defendants counter that they had no notice of Rivera-Barnes' improper conduct and thus had no reason to know that Rivera-Barnes was likely to abuse inmates. (Reply at 7.) This argument is unavailing, as the Court has already decided that notice is adequately alleged. And the nature of River-Barnes' alleged duties, as recounted above, do not foreclose the plausibility of respondeat superior liability. It might well turn out, when the evidence is dredged up and sifted through, that the circumstances were not such as to warrant imputation of liability to the Moving Defendants. But this determination must await discovery and factual development. See, e.g., Bryce v. Jackson Diners Corp., 96 A.2d 637 (R.I. 1953); Drake, 526 A.2d at 519; Lee, 2001 WL 770932, at *14 (all addressing respondeat superior issues at later stages in litigation).

    G.   Claims Under § 1983

    Perez Algarin has brought claims under § 1983 for cruel and unusual punishment, failure to protect, and denial of due process. The failure to protect and cruel and unusual punishment claims arise under the Eight Amendment and are analyzed by the same standard. Calderon-Ortiz v. LaBoy-

Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002) (quotations omitted) (citing Farmer v. Brennan, 511 U.S. 825, 828 (1994)). To prevail on these claims, Perez Algarin must show first that the Moving Defendants exposed him to "a substantial risk of serious harm" that was "objectively[] sufficiently serious," and second that they acted with "deliberate indifference" to this risk. Farmer, 511 U.S. at 834. In this context, "deliberate indifference" means that "the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "Thus, under the second requirement of Farmer, plaintiffs must show: (1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." Calderon-Ortiz, 300 F.3d at 64.

Here, there is no dispute as to the first element of Farmer. See Calderon-Ortiz, 300 F.3d at 64 ("a sodomy allegation is, objectively, sufficiently serious"). The quarrel, rather, is over the second element--deliberate indifference. In this respect, Perez Algarin has alleged that the Moving Defendants were aware as of April 2008 of serious allegations of sexual abuse of inmates by Rivera-Barnes; and that they not only took no measures to abate that risk until July, they permitted him to be placed in a situation of private, unsupervised confinement with Perez Algarin. (See supra at 11-

15

12.)  Perez Algarin has thus "allege[d] specific facts from which deliberate indifference could be inferred." Calderon-Ortiz, 300 F.3d at 65.[7]  Therefore, the Eighth Amendment claims should not be dismissed.

As for the due process claims, the Moving Defendants point out, and Perez Algarin does not dispute, that the only type of due process claim that could be brought, based on the allegations in the complaint, is one for substantive due process.  The Moving Defendants state that this claim requires a showing of deliberate indifference and must be dismissed because that element is not adequately pled.  (Mot. to Dismiss 18.)  As the foregoing analysis makes clear, however, deliberate indifference is adequately alleged, so the due process claim must stand.[8]

---

[7] Of course, at this stage, conclusive proof of deliberate indifference is not required. Even in later stages of litigation, deliberate indifference "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

[8] It is not clear that the substantive due process claim is governed by a deliberate indifference standard; it may actually require a higher showing. The Moving Defendants erroneously cite Coyne v. Cronin, 386 F.3d 280 (1st Cir. 2004), for the proposition that "[a] claim for a violation of substantive due process in the care of a prisoner requires a showing of deliberate indifference by the prison officials." (Mot. to Dismiss 18.) But there the First Circuit stated that it need

IV. Conclusion

It is evident that Plaintiff's counsel has cast a wide net, throwing in a good number of claims in the hopes that some would stick. It might well happen, as it does frequently in this kind of case, that the claims whittle down as the case progresses through discovery and evidence comes (or fails to come) to light. But the Court cannot do much whittling down on motion to dismiss, not even under the plausibility standard of <u>Twombly</u> and <u>Iqbal</u>. The complaint is carefully drawn and facts are specifically and plausibly alleged, so most of the claims must go forward. Accordingly, for the reasons stated above, the motion to amend is GRANTED, and the motion to dismiss is GRANTED only with respect to the claims of false imprisonment, negligent hiring, and negligent training and DENIED with respect to all other claims.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: June 20, 2011

---

not decide whether a substantive due process claim would require merely deliberate indifference or a higher showing, because the complaint did not even plead deliberate indifference, let alone a higher standard such as actual malice. <u>Coyne</u>, 386 F.3d at 288 & n.2. Because the issue of the proper standard governing the substantive due process claim was not briefed and is not before the Court, it need not be decided on this motion.